# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

Case No. 20-22383-Civ-WILLIAMS/TORRES

MTACC LTD. d/b/a EPAYSERVICE,

    Plaintiff,

v.

CHF CORPORATION, CARLOS
FLORES, DAVID J. BARTONE, and LAW
OFFICES OF DAVID J. BARTONE a/k/a
BARTONE LAW OFFICES,

    Defendants.

_____/

## REPORT AND RECOMMENDATION
## ON PLAINTIFF'S MOTION FOR FINAL DEFAULT JUDGMENT

This matter is before the Court on MTACC LTD. d/b/a EPAYSERVICE's ("Plaintiff") motion for final default judgment against CHF Corporation ("CHF"), Carlos Flores ("Mr. Flores"), David J. Bartone ("Mr. Bartone"), and the Law Offices of David J. Bartone a/k/a Bartone Law Offices ("Bartone Law") (collectively, "Defendants"). [D.E. 21]. No response was filed in opposition and the time to do so has passed. Therefore, Plaintiff's motion is now ripe for disposition.[1] After careful consideration of the motion and the record presented, Plaintiff's motion for final default judgment should be **GRANTED in part** and **DENIED in part**.

---

[1] On August 17, 2020, the Honorable Kathleen Williams referred Plaintiff's motion to the undersigned Magistrate Judge for disposition. [D.E. 22].

1

## *I. BACKGROUND*

Plaintiff filed this action on June 9, 2020 seeking a declamatory judgment for conversion, constructive fraud, breach of fiduciary duty, breach of contract, breach of an implied covenant of good faith, and unjust enrichment. [D.E. 1]. Plaintiff provides processing services throughout the world, including to freelance software developers, webmasters, and IT subcontractors. CHF, on the other hand, is a business that provides paymaster services where it collects and distributes funds for its clients. On February 21, 2019, Plaintiff and CHF entered into a Paymaster Services Agreement (the "Agreement"). This Agreement established a business relationship where CHF agreed to receive and handle funds from Plaintiff's clients in certain US bank accounts and to distribute them to Plaintiff via wire transfer or through the Automatic Clearing House ("ACH") system.

On May 19, 2020, CHF's counsel, Mr. Bartone, informed Plaintiff in writing that CHF desired a new Agreement that assigned its rights to another company. The individual who owned this other company had previously handled Plaintiff's business accounts. Plaintiff alleges that CHF and Mr. Flores were experiencing legal compliance issues with their accounts at Citibank and that the bank made the legal decision to close CHF's accounts on or before June 1, 2020. If implemented, this would make CHF incapable of performing its obligation under the Agreement.

Shortly thereafter, CHF requested that Plaintiff confirm in writing its ability to assign its rights under the Agreement to another company and to delegate all of

2

its obligations effective June 1, 2020. CHF requested this written confirmation because, under paragraph 13 of the Agreement, all assignments must be agreed to in writing to be valid. Plaintiff responded to CHF on May 21, 2020 and explained its concerns about CHF's inability to provide future services. Plaintiff also submitted payment instructions to CHF if the latter failed to honor the Agreement so that Plaintiff could recover the funds in CHF's possession. On May 26, 2020, CHF advised that it could no longer perform any ACH transactions and that it failed to issue two bank wires for one million dollars, notwithstanding Plaintiff's written payment instructions. Plaintiff then gave CHF five days written notice to cure its failures, but to no avail.

On May 27, 2020, Mr. Bartone demanded that Plaintiff enter into a new contract with CHF but Plaintiff refused to do so per the terms of the existing Agreement. When CHF failed to perform its obligations or to cure the prior breaches, this resulted in the automatic termination of the Agreement. On May 29, 2020, Plaintiff's corporate counsel spoke with Mr. Bartone and requested confirmation that CHF was in compliance with the payment services under the Agreement. Plaintiff never received a satisfactory response.

Three days later, CHF and Mr. Flores wired Plaintiff's funds in the amount of $1,167,258.09 to Mr. Bartone's trust account. Plaintiff alleges that Defendants had no legal right to transfer these funds in the absence of Plaintiff's written instructions. Citibank subsequently closed CHF's accounts, making it impossible

3

for CHF to perform any additional services. After Plaintiff spoke with Mr. Bartone, he stated that CHF and Mr. Flores agreed to release Plaintiff's funds if the parties executed a new agreement to continue their business relationship. Because Defendants had no legal right to withhold Plaintiff's funds to secure another agreement (after breaching the prior one), Plaintiff seeks money damages, interest, fees, and costs.

## II. APPLICABLE PRINCIPLES AND LAW

Rule 55 of the Federal Rules of Civil Procedure sets forth a two-step process for obtaining default judgment. First, when a defendant fails to plead or otherwise defend a lawsuit, the clerk of court is authorized to enter a clerk's default. *See* Fed. R. Civ. P. 55(a). Second, after entry of the clerk's default, the court may enter default judgment against the defendant so long as the defendant is not an infant or incompetent person. Fed. R. Civ. P. 55(b)(2). "The effect of a default judgment is that the defendant admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by entry by the judgment, and is barred from contesting on appeal the facts thus established." *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987) (internal quotation and citation omitted).

A court must review the sufficiency of the complaint before determining whether a moving party is entitled to default judgment pursuant to Rule 55(b). *See United States v. Kahn*, 164 F. App'x 855, 858 (11th Cir. 2006) (citing *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206) (5th Cir. 1975)). "While a

4

complaint . . . does not need detailed factual allegations," a plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). If the admitted facts are sufficient to establish liability, the Court must then ascertain the appropriate amount of damages and enter final judgment in that amount. *See Nishimatsu*, 515 F.2d at 1206; *see also PetMed Express, Inc. v. MedPets.com, Inc.*, 336 F. Supp. 2d 1213, 1216 (S.D. Fla. 2004).

Damages may be awarded only if the record adequately reflects the basis for the award, which can be shown with submission of detailed affidavits establishing the facts necessary to support entitlement to the damages requested. *See Adolph Coors Co. v. Movement Against Racism and the Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985). Rule 55 does not require an evidentiary hearing on the appropriate amount of damages, and it is within the Court's discretion to choose whether such a hearing should takes place. *See SEC v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005); *Tara Productions, Inc. v. Hollywood Gadgets, Inc.*, 449 F. App'x 908, 911-12 (11th Cir. 2011).

### III. ANALYSIS

Plaintiff seeks final default judgment in the amount of $1,167,258.09 for breach of contract, conversion, and unjust enrichment. Before we turn to the merits, we must consider whether Plaintiff can seek default judgment for these

5

claims. The general rule under Florida law is that "a simple monetary debt generally cannot form the basis of a claim for conversion," when there are allegations for breach of contract. *Walker v. Figarola*, 2011 WL 799737, at *1 (Fla. 3d DCA May 5, 2011); *see also Gasparini v. Pordomingo*, 972 So. 2d 1053, 1055 (Fla. 3d DCA 2008) ("It is well-established law in Florida that a simple debt which can be discharged by the payment of money cannot generally form the basis of a claim for conversion or civil theft."). However, "the general rule does not foreclose a claim for . . . conversion under certain limited circumstances." *Walker*, 2011 WL 799737 at *1. As the Third District Court of Appeal has explained:

> This is not to say that there can never be a claim for civil theft or conversion if there is a contractual relationship between the parties, but rather that the civil theft or conversion must go beyond, and be independent from, a failure to comply with the terms of a contract. *See Ginsberg v. Lennar Fla. Holdings, Inc.*, 645 So. 2d 490, 495 (Fla. 3d DCA 1994) ("[A] plaintiff may not circumvent the contractual relationship by bringing an action in tort.").

*Gasparini*, 972 So. 2d at 1055-56; *see also 1021018 Alberta Ltd. v. Netpaying, Inc.*, 2011 WL 1103635, at *4 (M.D. Fla. Mar. 24, 2011) ("[A] claim for conversion may lie even where a contractual relationship exists between the parties if the alleged conversion exists independently of an alleged failure to perform contractual duties."). This provides a limited exception if a defendant's acts are not merely a failure to perform under a contract, but "'an affirmative and intentional act of converting the funds to his own use by allegedly stealing the monies to which he was entrusted.'" *Bookworld Trade, Inc. v. Daughters of St. Paul, Inc.*, 532 F. Supp. 2d

6

1350, 1362 (M.D. Fla. 2007) (quoting *Pershing Indus., Inc. v. Estate of Sanz*, 740 So. 2d. 1246, 1248 (Fla. 3d DCA 1999)).

Florida courts have found that claims for conversion constitute "more than mere breach of contract" in two situations. The first arises where defendants or their employees have stolen or embezzled funds, which were entrusted to them by the plaintiffs, for their own benefit. *See Szterensus v. Bank of Am., N.A.*, 2010 WL 427509, at *1 (S.D. Fla. Feb. 1, 2010) (finding plaintiffs' allegations that the money deposited with defendant bank was stolen by bank employee presented more than mere breach of contract); *Burke v. Napieracz*, 674 So. 2d 756, 758 (Fla. 1st DCA 1996) (noting that defendant's "affirmative and intentional act of converting the funds to his own use by allegedly stealing the monies to which he was entrusted" gave rise to a tort separate and independent from the breach of contract). Under those circumstances, "the contract between the parties is irrelevant to the facts surrounding the alleged conversion or . . . the [breach of] contract is merely incidental to the conversion." *Szterensus*, 2010 WL 427509, at *3 (citing *Leisure Founders, Inc. v. CUC Int'l, Inc.*, 833 F. Supp. 1562, 1573 (S.D. Fla 1993)).

The second situation where these claims constitute more than a mere breach of contract involves funds that are owned by the plaintiff and given to defendant to temporarily hold in a segregated and identifiable account, which the defendant then refuses to return. *See 1021018 Alberta*, 2011 WL 1103635, at *4 (finding defendant had a common-law duty to return funds to plaintiff where plaintiff's entitlement to

7

those funds did not arise out of contract); *Batlle v. Wachovia Bank, N.A.*, 2011 WL 1085579, at *2 (S.D. Fla. Mar. 21, 2011) (finding claim of conversion of money in a bank account was proper where plaintiffs placed a certain amount of money into account and defendant later refused to return that money to plaintiffs); *see also Galstaldi v. Sunvest Comtys. USA, LLC*, 637 F. Supp. 2d 1045, 1059-60 (S.D. Fla. 2009) (recognizing conversion claim where "a party pays money to another for a specific purpose, as long as the money is 'delivered at one time, by one act and in one mass'") (citation omitted).

Here, Plaintiff's allegations go beyond a mere breach of contract claim because the facts underlying the alleged conversion are separate. CHF breached the contract, for example, when it failed to provide paymaster services that it was contracted to perform. CHF then went further and committed a conversion when it transferred Plaintiff's funds to Mr. Bartone's trust account and refused to return those funds because of leverage needed to secure another contract. This is a tort apart from the breach of contract claim because it includes an independent set of facts. *See Salary Continuation Corp. v. Brown & Brown of Detroit, Inc.*, 2012 WL 12904724, at *2 (M.D. Fla. June 1, 2012) ("'A tort action is not barred, however, when the tort is committed independently of the breach of contract. If a tort requires proof of fact separate and distinct from the breach of contract, then the tort is independent.'") (quoting *Auto-Owners Ins. Co. v. Ace Elec. Serv., Inc.*, 648 F. Supp. 2d 1371, 1381 (M. D. Fla. Aug. 25, 2009)). As such, Plaintiff may seek final default

8

judgment for both breach of contract and conversion.

To begin, a breach of contract claim has three elements: (1) a valid contract, (2) a material breach, (3) causation, and (4) damages. *Handi–Van, Inc. v. Broward Cty.*, 116 So. 3d 530, 541 (Fla. 4th DCA 2013. "A 'material breach' of a contract is a failure, without legal excuse, to perform any promise or obligation or that goes 'to the essence of the contract.'" *Oriole Gardens Condos., III v. Indep. Cas. & Sur. Co.*, 2012 WL 718803, at *11 (S.D. Fla. Mar. 6, 2012) (quoting *Covelli Family, LP v. ABG5, LLC*, 977 So. 2d 749, 752 (Fla. 4th DCA 2008); *Beefy Trail, Inc. v. Beefy King Int'l, Inc.*, 267 So. 2d 853, 857 (Fla. 4th DCA 1972)). An injured party in a breach of contract is entitled to recover those damages that "naturally flow from the breach and can reasonably be said to have been contemplated by the parties at the time the contract was entered." *Mnemonics, Inc. v. Max Davis Assocs., Inc.*, 808 So. 2d 1278, 1280 (Fla. 5th DCA 2002).

Plaintiff has met each of these elements because it alleges that the parties entered into a written agreement and that Defendant breached that contract when it refused to perform any additional paymaster services. Plaintiff also claims that Defendant failed to cure its defective performance in the time required and that this terminated the contract. When the breach occurred, Defendant was obligated to return Plaintiff's funds, but Defendant failed to do so. Given that Plaintiff has alleged every element – and each fact is deemed admitted against a defaulted defendant – Plaintiff's motion for final default judgment on its breach of contract

claim should be **GRANTED**.

Turning to conversion, this tort involves the "wrongful exercise of dominion or control over property to the detriment of the rights of one entitled to possession." *Seymour v. Adams,* 638 So. 2d 1044, 1046–47 (Fla. 5th DCA 1994). "[T]he elements of conversion are (1) an act of dominion wrongfully asserted; (2) over another's property; and (3) inconsistent with his ownership therein." *TracFone Wireless, Inc. v. Hernandez*, 196 F. Supp. 3d 1289, 1299 (S.D. Fla. 2016) (internal quotation marks and citations omitted); *see also Craig v. Kropp,* 2017 WL 2506386, at *6 (M.D. Fla. June 9, 2017) (listing elements of conversion under Florida law). Acquisition of property is unimportant. Instead, the essence of a conversion claim is a party's refusal to surrender property after a demand has been made. *See Murrell v. Trio Towing Service, Inc.,* 294 So. 2d 331 (Fla. 3rd DCA 1974); *Star Fruit Co. v. Eagle Lake Growers, Inc.,* 160 Fla. 130, 33 So. 2d 858 (1948) (en banc). The type of personal property subject to conversion includes money, so long as it consists of a specific amount of money capable of identification. *See Belford Trucking Co. v. Zagar,* 243 So. 2d 646 (Fla. 4th DCA 1970).

Plaintiff has met each element of a conversion claim because of the allegations that Defendants wrongly asserted control over Plaintiff's funds and refused to return them after repeated demands to do so. Plaintiff has also identified the funds withheld, Plaintiff's ownership, and Defendants' failure to return them. Because Plaintiff has satisfied each element with well-supported allegations, Plaintiff's

10

motion for final default judgment on its conversion claim should be **GRANTED**.

Having now determined that Plaintiff should be entitled to final default judgment on its breach of contract and conversion claims, we now consider Plaintiff's request for a permanent injunction.[2] "To obtain a permanent injunction, a plaintiff must establish a clear legal right, an inadequate remedy at law and that irreparable harm will arise absent injunctive relief." *K.W. Brown & Co. v. McCutchen*, 819 So. 2d 977, 979 (Fla. 4th DCA 2002) (citing *Dania Jai Alai Int'l, Inc. v. Murua,* 375 So. 2d 57, 58 (Fla. 4th DCA 1979)). The problem with Plaintiff's request is that it already has an adequate remedy at law in the form of money damages. *See Weinstein v. Aisenberg*, 758 So. 2d 705, 706 (Fla. 4th DCA 2000) ("We agree with appellants that the appellee failed to meet the requirements for issuance of a temporary injunction to prevent them from withdrawing funds from the subject banks. The appellee has an adequate remedy at law, i.e., money damages."). Plaintiff suggests that no adequate remedy exists because Defendants might transfer Plaintiff's funds to another bank

---

[2] Plaintiff's motion for final default judgment as to its unjust enrichment claim should be **DENIED** because the existence of a contract precludes an action for unjust enrichment. *See Williams v. Bear Stearns & Co.,* 725 So. 2d 397, 400 (Fla. 5th DCA 1998) (holding that a claim for unjust enrichment fails upon a showing that an express contract exists); *Poe v. Estate of Levy,* 411 So. 2d 253, 256 (Fla. 4th DCA 1982) (holding that an allegation of an express agreement necessarily precludes a claim for quantum meruit). In other words, no action can exist for unjust enrichment if Plaintiff has an adequate remedy for breach of contract. *See Camp Creek Hospitality Inns, Inc. v. Sheraton Franchise Corp., ITT,* 139 F.3d 1396, 1413 (11th Cir. 1998) ("Recovery on a theory of unjust enrichment however, is only available 'when as a matter of fact there is no legal contract.'"); *Tobin & Tobin Ins. Agency, Inc. v. Zeskind,* 315 So. 2d 518, 520 (Fla. 3rd DCA 1975). We will therefore omit any further discussion of Plaintiff's unjust enrichment claim.

account and deprive Plaintiff of the $1,167,258.09 in damages. But, "[t]he possibility that a money judgment, once obtained, will not be collectible is irrelevant under the test of inadequacy of remedy at law." *Hiles v. Auto Bahn Fed'n, Inc.*, 498 So. 2d 997, 999 (Fla. 4th DCA 1986) (reversing a permanent injunction because "an adequate remedy at law exists since the injury can be redressed in a court of law and the disputed $90,000 can be fully compensated by a judgment for money damages."); *see also Weinstein*, 758 So. 2d at 706 (same). Because money damages can compensate Plaintiff for the harm suffered, Plaintiff has failed to establish the elements for a permanent injunction and Plaintiff's motion, as to this relief, should be **DENIED**.

The final issue is Plaintiff's request for fees and costs. This request is, in many respects, incomplete because Plaintiff never identifies in the motion itself the amount sought or an explanation as to how its fees and costs are reasonable. Plaintiff simply points to two exhibits and leaves it for the Court to make that determination. We decline, however, to do the work that Plaintiff should have done in the first place. Plaintiff also never makes clear its statutory or contractual entitlement to fees and costs, making it uncertain why these expenses are appropriate in this case. Plaintiff mentions in one sentence that "fees and costs are recoverable under the prevailing party fee provision of the Agreement and Florida," but then never directs the Court to that provision, why it applies to the facts of this case, and whether this provision is enforceable under Florida law. Accordingly,

12

Plaintiff's motion for fees and costs should be **DENIED without prejudice** with leave to file a proper motion that complies with Local Rule 7.3 and sets forth Plaintiff's entitlement to these expenses and support for its reasonableness.

### *IV. CONCLUSION*

For the foregoing reasons, Plaintiff's motion for final default judgment [D.E. 21] should be **GRANTED in part and DENIED in part**:

    A.    Plaintiff's motion for final default judgment on its breach of contract and conversion claims should be **GRANTED**.

    B.    Plaintiff's motion for final default judgment on its unjust enrichment claim and a demand for a permanent injunction should be **DENIED**.

    C.    Plaintiff's motion for fees and costs should be **DENIED** without prejudice with leave to file a timely motion that sets forth Plaintiff's entitlement to these expenses and support for its reasonableness.

    D.    Plaintiff should be entitled to a monetary award of $1,167,258.09.

Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the parties have fourteen (14) days from service of this Report and Recommendation within which to file written objections, if any, with the District Judge. Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report *and* shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report. 28 U.S.C. § 636(b)(1); 11th Cir. Rule

13

3-1; *see, e.g., Patton v. Rowell,* 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Commissioner of Social Security,* 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

      **DONE AND SUBMITTED** in Chambers at Miami, Florida this 31st day of August, 2020.

                                              /s/ *Edwin G. Torres*
                                              EDWIN G. TORRES
                                              United States Magistrate Judge