UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 20-22383-Civ-WILLIAMS/TORRES

MTACC LTD. d/b/a EPAYSERVICE,

    Plaintiff,

v.

CHF CORPORATION, CARLOS
FLORES, DAVID J. BARTONE, and LAW
OFFICES OF DAVID J. BARTONE a/k/a
BARTONE LAW OFFICES,

    Defendants.
_____/

**REPORT AND RECOMMENDATION
ON DEFENDANTS' MOTION TO SET ASIDE FINAL DEFAULT JUDGMENT**

This matter is before the Court on CHF Corporation's ("CHF") and Carlos Flores's ("Mr. Flores") (collectively "Defendants") motion to set aside the Court's entry of final default judgment. [D.E. 31]. MTACC LTD. d/b/a EPAYSERVICE's ("Plaintiff") responded to Defendants' motion on November 30, 2020 [D.E. 33] to which Defendants replied on December 7, 2020. [D.E. 38]. Therefore, Defendants' motion is now ripe for disposition. After careful consideration of the motion response, reply, relevant authority, and for the reasons discussed below, Defendants' motion to set aside final default judgment should be **GRANTED**.[1]

---

[1] On December 1, 2020, the Honorable Kathleen Williams referred Defendants' motion to the undersigned Magistrate Judge for disposition. [D.E. 36].

1

### *I. BACKGROUND*

Plaintiff filed this action on June 9, 2020 seeking a declaratory judgment for conversion, constructive fraud, breach of fiduciary duty, breach of contract, breach of an implied covenant of good faith, and unjust enrichment. [D.E. 1]. Plaintiff provides processing services throughout the world, including to freelance software developers, webmasters, and IT subcontractors. CHF, on the other hand, is a business that provides paymaster services where it collects and distributes funds for its clients. On February 21, 2019, Plaintiff and CHF entered into a Paymaster Services Agreement (the "Agreement"). This Agreement established a business relationship where CHF agreed to receive and handle funds from Plaintiff's clients in certain US bank accounts and to distribute them to Plaintiff via wire transfer or through the Automatic Clearing House ("ACH") system.

On May 19, 2020, CHF's counsel, Mr. Bartone, informed Plaintiff in writing that CHF desired a new agreement that assigned its rights to another company. The individual who owned this other company had previously handled Plaintiff's business accounts. Plaintiff alleges that CHF and Mr. Flores were experiencing legal compliance issues with their accounts at Citibank and that the bank made the legal decision to close CHF's accounts on or before June 1, 2020. If implemented, this would make CHF incapable of performing its obligation under the Agreement.

Shortly thereafter, CHF requested that Plaintiff confirm in writing its ability to assign its rights under the Agreement to another company and to delegate all of

2

its obligations effective June 1, 2020. CHF requested this written confirmation because, under paragraph 13 of the Agreement, all assignments must be agreed to in writing to be valid. Plaintiff responded to CHF on May 21, 2020 and explained its concerns about CHF's inability to provide future services. Plaintiff also submitted payment instructions to CHF if the latter failed to honor the Agreement so that Plaintiff could recover the funds in CHF's possession. On May 26, 2020, CHF advised that it could no longer perform any ACH transactions and that it failed to issue two bank wires for one million dollars, notwithstanding Plaintiff's written payment instructions. Plaintiff then gave CHF five days written notice to cure its failures, but to no avail.

On May 27, 2020, Mr. Bartone demanded that Plaintiff enter into a new contract with CHF but Plaintiff refused to do so per the terms of the existing Agreement. When CHF failed to perform its obligations or to cure the prior breaches, this resulted in the automatic termination of the Agreement. On May 29, 2020, Plaintiff's corporate counsel spoke with Mr. Bartone and requested confirmation that CHF was in compliance with the payment services under the Agreement. Plaintiff never received a satisfactory response.

Three days later, CHF and Mr. Flores wired Plaintiff's funds in the amount of $1,167,258.09 to Mr. Bartone's trust account. Plaintiff alleged that Defendants had no legal right to transfer these funds in the absence of Plaintiff's written instructions. Citibank subsequently closed CHF's accounts, making it impossible

3

for CHF to perform any additional services. After Plaintiff spoke with Mr. Bartone, he stated that CHF and Mr. Flores agreed to release Plaintiff's funds if the parties executed a new agreement to continue their business relationship. Because Defendants had no legal right to withhold Plaintiff's funds to secure another agreement (after breaching the prior one), Plaintiff sought money damages, interest, fees, and costs.

On August 31, 2020, the undersigned issued a Report and Recommendation ("R&R"), recommending that final default judgment be entered against Defendants for a breach of contract and conversion claim with a monetary award of $1,167,258.09. The Court adopted the R&R on September 16, 2020 [D.E. 27] and Plaintiff filed a motion for fees and costs. The undersigned issued another R&R on November 3, 2020, recommending that Plaintiff be entitled to a fee and cost award of $24,142. [D.E. 30]. Thirteen days later, Defendants filed a motion to set aside the default judgment that is now ripe for disposition. [D.E. 31].

## II. ANALYSIS

Defendants seek to set aside final default judgment for three reasons: (1) Plaintiff failed to serve Mr. Flores as required under state or federal law, (2) any failure to appear was the result of excusable neglect, and (3) Defendants' former counsel fell ill and failed to comply with his legal responsibilities. Plaintiff opposes the motion in all respects because service of process was properly effectuated via process server, Federal Express, and United States mail. Plaintiff also opposes any

4

relief for excusable neglect because Defendants failed to offer any reasonable explanation for their attorney's failure to respond to the complaint, the motion for default judgment, or the Court's entry of final judgment. And even if Defendants could show excusable neglect, Plaintiff argues that Defendants have no viable defense to the complaint's allegations nor may they seek relief under the catchall provision of Fed. R. Civ. P. 60(b)(6). For these reasons and others, Plaintiff demands that the motion to set aside final default judgment be denied.

### A.  *Fed. R. Civ. P. 60(b)(1)*

Pursuant to Rule 55, "[t]he court may set aside an entry of default for good cause, and it may set aside a final default judgment under Rule 60(b)." Fed. R. Civ. P. 55(c). Under Rule 60(b)(1), a court may relieve a party from a final judgment for mistake, advertence surprise or excusable neglect. *See Chege v. Georgia Dep't of Juvenile Justice*, 787 F. App'x 595, 597 (11th Cir. 2019); Fed. R. Civ. P. 60(b)(1). Motions requesting relief under Rule 60(b)(1) should be filed no more than one year after entry of the objectionable order. Excusable neglect is based in equity and considers "the totality of the circumstances surrounding the party's omission." *Sloss Indus. Corp. v. Eurisol*, 488 F.3d 922, 934 (11th Cir. 2007).

By its nature, Rule 60(b) "seeks to strike a delicate balance between two countervailing impulses: the desire to preserve the finality of judgments and the 'incessant command of the court's conscience that justice be done in light of all the facts.'" *Grant v. Pottinger-Gibson*, 2016 WL 867111, at *1 (S.D. Fla. Mar. 7,

2016), *aff'd*, 725 F. App'x 772 (11th Cir. 2018) (quoting *Aldana v. Del Monte Fresh Produce N.A., Inc.*, 741 F.3d 1349, 1355 (11th Cir. 2014)). "While Rule 60(b) generally requires liberal application in cases of default judgments, this policy does not apply in cases of willful misconduct, carelessness, or negligence." *Id.* Ultimately, to set aside a default judgment for excusable neglect in the Eleventh Circuit, the defaulting party must show: (1) it had a meritorious defense; (2) granting the motion would not prejudice the other party; and (3) they had a "good reason" for failing to respond. *Grant v. Pottinger-Gibson*, 725 F. App'x 772, 775 (11th Cir. 2018). We consider each element in turn.

### 1. *A Meritorious Defense*

The first element requires a moving party to establish a meritorious defense "by a clear and definite recitation of the facts." *Gibbs v. Air Canada*, 810 F.2d 1529, 1538 (11th Cir. 1987). "A general denial of the plaintiff's claims contained in an answer or another pleading is not sufficient." *S.E.C. v. Simmons*, 241 F. App'x 660, 664 (11th Cir. 2007). Rather, the moving party "must make an affirmative showing of a defense that is likely to be successful." *Solaroll Shade & Shutter Corp. v. Bio-Energy Sys., Inc.*, 803 F.2d 1130, 1133 (11th Cir. 1986). "Neither ignorance nor carelessness on the part of a litigant or his attorney provide grounds for relief under Rule 60(b)(1)." *Ben Sager Chemicals Int'l, Inc. v. E. Targosz & Co.*, 560 F.2d 805, 809 (7th Cir. 1977) (citation omitted).

Defendants argue that they have several viable defenses to Plaintiff's causes

6

of action, including allegations that Plaintiff committed a prior breach of contract, fraud, and unclean hands. Defendants also state that Plaintiff's other claims are equally deficient because of pleading errors or the omission of certain facts. Defendants, assert, for example, that the conversion claim cannot stand because Plaintiff consented to the transfer of funds and failed to make any demand for its return. *See Comprehensive Care Corp. v. Katzman*, 2011 WL 2960916, at *8 (M.D. Fla. July 21, 2011) ("There can be no conversion where aperson consents to the possession by another of the assets allegedly converted.") (quoting *In re General Plastics Corp.,* 184 B.R. 996, 1004 (Bkrtcy. S.D. Fla. 1995)). In addition, Defendants take aim at Plaintiff's constructive fraud claim because it lacks the specificity required under Fed. R. Civ. P. 9 to state a claim. And to the extent those deficiencies are overlooked, Defendants accuse Plaintiff of failing to allege a fiduciary relationship as a requirement for both constructive fraud and breach of a fiduciary duty. Thus, Defendants maintain that many, if not all, of Plaintiff's claims are subject to dismissal and that it shows there are several viable defenses to the allegations presented.

Plaintiff's response is that Defendants have failed to show a meritorious defense because there has been no explanation as to why Defendants withheld Plaintiff's money in the first place. In fact, Plaintiff claims that Defendants continue to withhold these funds and that – despite attacking the sufficiency of the allegations – they have no justification for their unlawful conduct. The problem

7

with Plaintiff's response is that Defendants dispute all of the facts presented in the complaint. Defendants assert, for example, that Plaintiff never demanded a return of the withheld funds. So, contrary to Plaintiff's response, there is an explanation as to why Defendants failed to return the withheld funds. Yet, even if Defendants had failed to explain all the reasons Plaintiffs funds were not returned, Plaintiff has no answer as to how Defendants lack a meritorious defense when the latter identified several pleading deficiencies that cast doubt on whether many of Plaintiff's claims have any merit. Plaintiff makes the assumption that these pleading errors can be ignored because Defendants' arguments, at least with respect to this point, remain unchallenged. But, if some of the counts fail to state a claim, lack the required specificity, and otherwise fail to allege certain elements, it is difficult to find how Defendants have no meritorious defenses. We therefore conclude that Defendants have established the first requirement to seek relief under Fed. R. Civ. P. 60(b)(1).

    *2.*    *Excusable Neglect*

Turning to whether Defendants have a "good reason" for failing to respond or otherwise defend this action, Defendants claim that they, unlike their former attorney, acted diligently since the inception of this case. On June 11, Defendants state that they learned of this lawsuit and referred the case to their attorney, Mr. Bartone. On July 29, 2020, Mr. Flores texted Mr. Bartone so that they could arrange a convenient time to speak about the case. [D.E. 31-2 at 8]. Mr. Bartone

8

responded that he was at the doctor's office and that he would call Mr. Flores afterwards. Mr. Flores subsequently responded with the message: "Don't forget me Dave. Hope all is good." *Id*. Despite this being the first time that Mr. Bartone had mentioned his health, Defendants allege that Mr. Bartone failed to inform his clients that default had been entered against them on July 20, 2020.

Fast-forward to August 2020, Mr. Bartone informed Mr. Flores that he had contracted COVID-19 but that he would be able to continue the legal representation. On August 12, 2020, Mr. Flores contacted Mr. Bartone again via text and requested a telephone call to discuss the case. Mr. Bartone stated, in response, that he was at the doctor's office again and apologized for being unavailable:

> Carlos, I'm at the doctor's office again. I'm sorry I haven't been available. I'm working on this, but MTACC is not willing to provide information. I'll explain more when we talk.

*Id*. at 9. Mr. Flores responded with the hope that Mr. Bartone would get well soon, but cautioned Mr. Bartone that "[w]e need to respond." *Id*. Mr. Flores then continued to send Mr. Bartone text messages later that day and on August 13, 2020:

> Hey Dave. How are you? What are the docs telling you?
> Good morning Dave, hope you are feeling better. Please call me when you can.
> Hey Dave. How are you?

*Id*. at 10. Mr. Bartone eventually responded on August 14, 2020 and stated that he was feeling much better. *See id*. On August 18, 2020, Mr. Flores texted Mr. Bartone again and stated that he had received some legal paperwork from Plaintiff's counsel, requesting the entry of final default judgment:

9

> Got some docs from Jeffrey Douglas today.  Having my asst[ant] scan and will send them to you soon.  Apparently they are suing us for 75k in damages.  Lol[.]

*Id.* at 11.  Mr. Bartone responded that he had all the paperwork and would call Mr. Flores later to discuss.  *See id.*  But, the phone call never took place and, the next day, Mr. Flores texted Mr. Bartone again so that they could find a time to discuss the lawsuit.  The communications between the two then fell silent until September 10, 2020, when Mr. Flores contacted Mr. Bartone, who responded that he would call his client in 30 minutes.  However, that phone call never took place and Mr. Flores texted again several times in the following days with no response:

> Please and thank you.
> Dave?
> David can you call me please.
> Just checking in [to] see how are you?
> Hey Dave.  How are [you] feeling?  Give me a call[.]
> Dave how are you?  How is everything?  Please call me so we can catch up[.]
> Call me when you can[.]

*Id.* at 12-13.

After numerous attempts texts, Mr. Bartone finally responded to Mr. Flores on September 30, 2020 with the assertion that he would follow up on everything and get back to Mr. Flores later that day.  As usual, Mr. Bartone failed to contact his clients and Defendants claim that they were unaware that the Court entered final default judgment against them on September 16, 2020.  [D.E. 27].  Mr. Flores then made additional attempts to contact Mr. Bartone to receive an update on the lawsuit, but, at this point, most messages went unanswered throughout the month

10

of October. *See id.* at 14.

On October 21, 2020, Mr. Bartone finally responded with an explanation that he was recently discharged from the hospital after having undergone a surgical operation:

> Carlos, I got home from the hospital today. I had some surgery. I'm okay. Can we talk in the morning? I'm sorry I haven't been available. I've been in pain for weeks. I'll explain more tomorrow.

*Id.* After several more attempts to reach Mr. Bartone, Mr. Flores hired new counsel who explained that final default judgment had been entered. All subsequent attempts to communicate with Mr. Bartone have been unsuccessful and his whereabouts are unknown.

Plaintiff opposes any relief under Fed. R. Civ. P. 60(b)(1) because Defendants have failed to allege anything that arises to excusable neglect. Specifically, Plaintiff claims that an attorney's inattention to a case is not an adequate basis to seek relief for excusable neglect and that, clients must be held accountable for the acts and omissions of their lawyers. Plaintiff states that Mr. Flores, by his own admission, acknowledged receipt of the request for final default judgment and did nothing other than contact his attorney for months on end when he should have retained new counsel and filed a motion to set aside the default judgment long ago. Because these actions do not go hand in hand with a client acting diligently, Plaintiff concludes that this requirement has not been met and that Defendants have failed to show excusable neglect. *See, e.g., Solaroll Shade & Shutter Corp. v.*

11

*Bio-Energy Sys., Inc.*, 803 F.2d 1130, 1132 (11th Cir. 1986) ("[A]n attorney's negligent failure to respond to a motion does not constitute excusable neglect, even if that attorney is preoccupied with other litigation.") (citing cases); *In re Hillsborough Holdings Corp.*, 270 B.R. 306, 310 (Bankr. M.D. Fla. 2001) ("[W]here the only basis for a claim of excusable neglect is inattention of counsel because of preoccupation with other litigation, there is no basis for a finding of excusable neglect.").

The Eleventh Circuit "has demonstrated its wariness of grants of Rule 60(b)(1) relief for excusable neglect based on claims of attorney error," *Cavaliere v. Allstate Ins. Co.*, 996 F.2d 1111, 1114 (11th Cir. 1993), because, even in cases where an attorney commits gross misconduct, a party must still demonstrate his own diligence. *See Securities and Exchange Commission v. Simmons*, 241 F. App'x 660, 664 (11th Cir. 2007) ("At the very least, a party must demonstrate his own diligence, even where the attorney commits gross misconduct.") (citing cases); *Ake v. Mini Vacations, Inc.*, 174 F.R.D. 110, 112 (M.D. Fla. 1997) ("The Eleventh Circuit does not generally allow . . . Rule 60(b)(1) relief for excusable neglect due to an attorney's conduct."). The reason for this rule is because it "does not actually penalize innocent clients," in so much as "a person voluntarily chooses his or her attorney as their representative and, therefore, the client cannot avoid the consequences of this choice in the event of acts or omissions by the attorney." *Ake*, 174 F.R.D. at 112 (citing *Link v. Wabash R.R. Co.*, 370 U.S. 626, 633 (1962)).

12

An instructive case on this point is the Eleventh Circuit's decision in *Florida Physician's Ins. Co. v. Ehlers*, 8 F.3d 780 (11th Cir. 1993), where the Court established that a party has a duty to monitor the progress of his or her own case. There, the defendant moved to Hawaii from Florida, and claimed excusable neglect because he was unable to contact his attorney at the time default was entered. *See id.* at 784. The Eleventh Circuit held that this was not excusable neglect because the defendant "appear[ed] to have done nothing to ensure that his interests were being sufficiently represented," and "[s]uch inaction demonstrate[d] a lack of diligence on [the client's] part, especially when [plaintiff] alleged millions of dollars of damages in its complaint." *Id.*

This case is noticeably different than *Ehlers* and all the cases that Plaintiff relies upon because Mr. Flores has carefully explained, with documentary evidence, how he acted diligently. He immediately hired Mr. Bartone to represent Defendants and then corresponded with his attorney every step of the way. And even when Mr. Barton gave assurances that he would defend the case, Mr. Flores still inquired about the case, sought phone calls, and presented questions. Plaintiff argues that Defendants failed to allege excusable neglect because Mr. Flores, by his own admission, acknowledged receipt of the motion for default judgment. But, that acknowledgement cuts against Plaintiff's argument because Mr. Flores has shown that (1) he did not understand the concept of default judgment, and (2) made countless attempts to ask his lawyer about how the case should proceed.

13

It is certainly true that "illness alone is not a sufficient basis for setting aside a judgment[.]" *Abbey v. Mercedes-Benz of N. Am., Inc.*, 2007 WL 879581, at *1 (S.D. Fla. Mar. 20, 2007) (quoting *Carrcello v. TJX Cos.,* 192 F.R.D. 61, 64 (D. Conn. 2000)). Yet, Defendants have done much more than rely on Mr. Bartone's illness and failure to defend this action. Defendants have also shown that Mr. Bartone misrepresented the status of this case with assertions that he was "working on this," that he had "all of the paperwork," and that he would call his client when each time he failed to do so. *See, e.g.*, *Community Dental Servs. v. Tani,* 282 F.3d 1164, 1169 (9th Cir. 2002) (concluding that a defendant was entitled to relief under 60(b)(6) where his lawyer's gross negligence led to a default judgment and the lawyer had repeatedly misrepresented to the defendant that the case was proceeding smoothly). More importantly, Defendants have demonstrated *their own diligence* to show they contacted their attorney many times, relied on his representations, and hired new counsel as soon as their prior counsel became entirely unresponsive. Therefore, given these arguments and the evidence presented, Defendants' motion to set aside final default judgment [D.E. 31] should be should be **GRANTED**.[2]

---

[2] For the reasons stated above, we offer no opinion on any other argument presented in the motion to set aside final default judgment.

### *III. CONCLUSION*

For the foregoing reasons, Defendants' motion to set aside final default judgment [D.E. 31] should be should be **GRANTED**.[3]

Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the parties have fourteen (14) days from service of this Report and Recommendation within which to file written objections, if any, with the District Judge.  Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report *and* shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report.   28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see, e.g., Patton v. Rowell,* 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v.*

---

[3] There is no need to spend much time and effort on the prejudice requirement because Plaintiff did not present any arguments in opposition to this element.  This element starts with the considerations of prejudice to the non-movant and the delay's impact on "efficient judicial administration."  *Cheney v. Anchor Glass Container Corp.*, 71 F.3d 848, 850 (11th Cir. 1996).  Any prejudice to Plaintiff would be nominal at best because this case was just filed back in June 2020 with little effort expended in securing default judgment.  There has also been no showing that the brief delay in allowing Defendants to litigate this case would lead to stale evidence.  *See, e.g., Cobos v. Adelphi Univ.*, 179 F.R.D. 381, 387 (E.D.N.Y. 1998) (finding non-movant would be prejudiced where evidence went stale during movant's multiple-year delay).  Nor is this a case where the delay puts either party in a position of unfair advantage. *See In re Guidant Corp. Implantable Defribrillators Prods. Liab. Litig.*, 496 F.3d 863, 867 (8th Cir. 2007) (holding that the movant's delay was prejudicial to non-movant where the delay hindered the non-movant's investigation of the case and thereby gave an unfair advantage to the movant).  The same is true with respect to any impact on "efficient judicial administration" because, if anything, this delay will allow the parties to litigate their claims and defenses on the merits.  And given Plaintiff's failure to identify any prejudice to find otherwise, we conclude that this requirement has been met.

*Commissioner of Social Security,* 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**DONE AND SUBMITTED** in Chambers at Miami, Florida this 24th day of December, 2020.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge